Frederic S. Berman, J.
On January 31, 1974, the defendant was tried before the court, without a jury, for allegedly violating the provisions of subdivision (a) of section 153.19 of the New York City Health Code. At the end of the trial, defendant moved to dismiss the complaint on the grounds that the aforementioned statute is overly broad and vague, and in violation of the due process clause of the United States Constitution. The court reserved decision on the motion.
This case appears to be of first impression with respect to the constitutionality of this section of the New York City Health Code.
Defendant is the owner of real property on Eldridge Street, situated in the Borough of Manhattan in the City of New York. As the owner of said real property, the defendant was served with a summons by a patrolman of the Department of Sanitation of the City of New York, charging the defendant with a violation of subdivision (a) of section 153.19 of the New York City Health Code.
At the trial, the Department of Sanitation patrolman testified that he had observed great accumulations of debris, litter and *1045 garbage on the sidewalk abutting the property owned by the defendant, but conceded that he did not observe the defendant actually contribute to the accumulation.
The defendant contends that subdivision (a) of section 153.19 is unconstitutional and alleges that the language of the aforementioned section of the New York City Health Code: is too vague and imprecise and thus violates the due process clause of the Constitution; fails to inform persons as to what conduct on their part will constitute a violation of this section; gives unfettered discretion in the hands of enforcement personnel and thus encourages arbitrary and discriminatory enforcement.
The statute around which the controversy is centered (N. Y. City Health Code, § 153.19, subd. [a]) states:[1] “The owner, agent, lessee, tenant, occupant or other person who manages or controls a building - or lot shall be jointly and severally responsible for keeping the sidewalk, flagging and curbstone abutting the premises free from obstructions and nuisances and for keeping such sidewalk, flagging and curbstone, the air shafts, areaways, backyards, courts and alleys, or lot clean and free from garbage, refuse, rubbish, litter, or other offensive matter or accumulation of water.”
There can be little doubt that the City of New York has the power to adopt such a statute covering the prescribed subject matter.[2]
*1046 Coupled with this are many cases granting police power to localities for the preservation and promotion of health, safety and general welfare of their inhabitants (People v. Lewis, 295 N. Y. 42; People v. Munoz, 22 Misc 2d 1078; People v. Lederle, 206 Misc. 244, affd. 285 App. Div. 974; Matter of Molnar v. Curtin, 273 App. Div. 322, affd. 297 N. Y. 967).
The afore-mentioned provisions of the New York City Health Code represent an attempt on the part of the City of New York to promote the public health and welfare of its citizenry by holding owners, agents, lessees, tenants, occupants and others who manage or control property directly responsible for keeping specified areas under their control free from refuse and obstruction. (Such duty imposed on the owner has been held to be enforceable only at the instance of the city; see Spector v. Pulglisi, 9 Misc 2d 250; City of Rochester v. Campbell, 123 N. Y. 405.)
In construing laws and regulations governing public health, courts generally apply the concept that such legislation should be liberally construed. (United States v. Dotterwich, 320 U. S. 277 — adulterated drugs in interstate commerce; United States v. Kordel, 164 F. 2d 913, affd. 335 U. S. 345 — false labeling; People v. Frudenberg, 209 N. Y. 218 — cleansing bottles and items used in transporting milk; People v. New York Edison Co., 159 App. Div. 786 — regulating smoke from generating plant; People v. Murray, 174 Misc. 251 — regulating “ dense smoke ”; People v. Whitestone Boosters Civic Assn., 191 Misc. 121 — regulation of “ public bathing beaches ”.)
Usually, statutes legislated with an aim to promote the public good will receive a liberal construction and are expounded in such a manner that they can, as far as possible, obtain the intended goal. Included within this category so construed are those relating to public health (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 341; People v. Whitestone Boosters Civic Assn., supra).
This concept is apparently in conflict with the criminal law concept of “ nullum crimen sine lege ” whereby criminal statutes should be definite and certain, thus allowing a person to know what is and what is not a crime before he acts.
In People ex rel. Styler v. Commonwealth Sanitation Co. (107 N. Y. S. 2d 982), the defendants sought to have section 181 of the Sanitary Code (presently N. Y. City Health Code, § 3.09) declared unconstitutional as being too vague and too indefinite. The statute stated: “ No person shall do or assist in any act which is or may be detrimental to the public health or to the *1047 life or health of any individual unless the act is authorized by law. No person shall fail to do any reasonable act or take any necessary precaution to protect human life and health.”
In upholding the constitutionality of the statute, the court stated (pp. 984-985): “ As a general proposition, it is true that the criminal law should be definite and certain and that it should be possible for any one to know what is and what is not criminal before he acts. Nullum crimen sine legae is a basic principle of the criminal law of the Western World. Unfortunately the myriad forms of socially dangerous or socially objectionable behavior do not lend themselves to meticulous definitions. The criminal law must operate in large areas of objectionable behavior with general standards and through general criteria * * * So long as the standards laid down by the Legislature in the penal provisions are capable of reasonable application to varying fact situations, no fault can be found with the statute. The terms used by Section 181 of the Sanitary Code * * * are no more indefinite and uncertain than those used in * * * criminal statutes whose constitutionality has never been questioned.” (Emphasis supplied.)
The position taken by the court in Commonwealth Sanitation (supra), certainly is applicable to the present controversy involving subdivision (a) of section 153.19 of the New York City Health Code. Certainly the afore-mentioned section is capable of reasonable application to the varying fact patterns presented in a city of the size of New York. A periodic policing by the owner or his employees (the number of times required depends on the specific situation of the location of the premises) to keep his premises — sidewalks, backyards, alleys — free from litter, garbage and obstructions is not oppressive but a duty incident to ownership, whereby any littered or cluttered premises present immediate dangers to the health and safety of many individuals.
Defendant would have us believe that we have reached an Orwellian state where sanitation patrolmen constantly monitor a premises, waiting only for the smallest signs of litter or refuse to appear before they rush out and present defendant with a summons at any hour of the day or night. On the contrary, the statute is designed to require an owner to make a reasonable effort to maintain the premises, over which he has control, free from litter, refuse, obstruction, and other offensive matter.
In the absence of any New York decision on the same point, the case of the City of Pittsburgh v. Pennsylvania R. R. (14 Pa. D. & C. 2d 499, affd. 394 Pa. 58), involving a statute similar *1048 to subdivision (a) of section 153.19 of the New York City Health Code, appears the closest in point. There the court, in upholding the constitutionality of such a statute, stated that (p. 505): “ The ordinance places upon all owners the affirmative duty of removing from the public thoroughfare objects which have slipped or fallen thereon from their land. Such a duty is imposed upon one and all by the governmental body by virtue of its police power, as an incident to the ownership of property. In such a case the owner’s liability does not depend upon fault; the concept of negligence is not even involved. * * * The property owner can be compelled not only to keep his sidewalk in repair, but can also be required to keep it free of all obstructions, whether placed there by himself, by the forces of nature, or even by a stranger.'” (Emphasis supplied.)
Thus, defendant’s duty in the present action is one incident to ownership. The fact that a tenant or stranger might throw a bag of litter onto the sidewalks abutting defendant’s property has no bearing on the matter. The City of New York, through its police powers, is charging the defendant, as owner and one who has constant control and access to the sidewalks abutting his premises, with the duty of maintaining them free from litter and obstructions. Though such a duty is a continuous one, in no way can it be considered such an unreasonable and onerous duty as to be in violation of the due process clause.
To bolster defendant’s argument as to the issue of unconstitutionality, the defendant herein has referred the court to a great number of decisions, including United States Supreme Court rulings, on the issues of precision required of criminal statutes by the due process clause of the Constitution. (They include Olmstead v. United States, 277 U. S. 438, dealing with wiretapping; Buchanan v. Warley, 245 U. S. 60, going into the aspects of a statute prohibiting the sale of a house to blacks ; Block v. Hirsch, 256 U. S. 135, discussing rent regulations; Schneider v. State, 308 U. S. 147, where a littering statute was used to harass a person handing out leaflets; United States v. Harris, 347 U. S. 612, concerned with the Lobbying Act; Lanzetta v. New Jersey, 306 U. S. 451, directing itself to the definition of “ gangster ” in a New Jersey statute; Connally v. General Constr. Co., 269 U. S. 385, going into the problem of a statute giving severe penalties to employers for paying employees “ less than the current rate of per diem in the locality ”; People v. Firth, 3 N Y 2d 472, concerning itself with the definition of “ speeding” in the Vehicle and Traffic Law; Baggett v. Bullitt, 377 U. S. 360, dealing with the oath formerly *1049 required of civil servants, stating that they were not “ subversives ”; Thornhill v. Alabama, 310 U. S. 88, directing itself to a loitering and picketing statute which required local officials to interpret what a “ just cause or legal excuse ” was and thus allow or prevent an individual to picket; People v. Berck, 32 N Y 2d 567, dealing with a loitering statute which required local officials to interpret that an individual had .or had not given “ a reasonably credible account of [his] conduct and purpose.”)
After consideration of these numerous citations, it must be concluded that they are not germane to the issue before this court. They deal primarily with private rights of an individual. They do not direct themselves to the exercise of police power of a city which enables it to adopt legislation for the preservation and promotion of the health, safety and the general welfare of its inhabitants. The liability imposed by the ordinance herein is thus entirely different and clearly distinguishable from that involved in the cases cited by the defendant.
Accordingly, the defendant’s motion to dismiss the complaint on the grounds that subdivision (a) of section 153.19 of the New York City Health Code is unconstitutional, is denied. The defendant’s motion to dismiss for failure of the People to establish the guilt of the defendant beyond a reasonable doubt is denied. The defendant is found guilty as charged.

. The provisions of subdivision (a) of section 153.19 of the New York City Health Code are virtually identical with section 755(2)-7.0 of the Administrative Code of the City of New York. Violation of the Administrative Code provisions is an “ offense punishable by a fine of not more than one hundred dollars or by imprisonment not to exceed thirty days or both ”, while the violation of any of the provisions of the New York City Health Code constitutes a misdemeanor under the City Charter, and is punishable by imprisonment up to one year, a fine of not more than one thousand dollars, or both (Penal Law, § 55.10, subd. 2).

. Municipal Home Rule Law section 10 (subd. 1, pars, [i] and [ii], and cl. a, subd. [12]) states:
“ (i) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law relating to its property, affairs or government and,
“ (ii) every local government, as provided in this chapter, shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law, relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government: a. A county, city, town or village:
- “ (12) The government, protection, order, conduct, safety, health and well-being of persons or property therein.”