Mary Johnson Lowe, J.
Justino Santos and Louis Morales were indicted for murder and other crimes by the Bronx County Grand Jury on July 16, 1974. They were not in custody at the time of the indictment. Santos was arrested on September 26, 1974 on the Grand Jury warrant. Detective Cronin, in charge of the case, was notified and reported to the precinct. Later that evening, an Assistant District Attorney arrived at the precinct with a stenographer. Detective Cronin does not recall telling the Assistant District Attorney that Santos had been indicted but does recall telling him the facts of the case. Detective Cronin testified that he had been in the police department 18 years and a homicide detective six years and that this was the first time he had seen a felony statement taken by an Assistant District Attorney from a person who had already been indicted. The court does not credit Detective Cronin’s testimony that he told Santos he had been indicted because that was the only thing this witness seemed to remember about the events of September 26, 1974 in the precinct. He could not recall whether he told the Assistant District Attorney about the indictment; he could not recall that after about a half hour of questioning, the questioning was terminated by the Assistant District Attorney and that for about nine minutes, there was an unrecorded discussion between the witness and the District Attorney both in the presence of the accused and outside his presence; the witness could not recall that after this unrecorded discussion the questioning was reopened and the defendant changed his story from one that could be presumed to be exculpatory to a direct confession of guilt. Certainly if the witness remembered telling the accused he had been indicted he would also have recalled the more dramatic events recited above. The court, therefore, rejects the selective memory of this witness and does not credit the testimony that he told the accused he was under indictment. After having his memory refreshed concerning the nine minutes’ unrecorded break in the interrogation, the following colloquy ensued between the court and the witness:
*604 "The Court: And he made a voluntary statement?
The Witness: Yes, your Honor.
The Court: And you weren’t satisfied?
The Witness: Not after I had talked to witnesses. No, your Honor.
The Court: Well, wasn’t the result of reopening this statement and having Mr. Darcy re-question Mr. Santos, that Mr. Santos made some very damaging admissions?
The Witness: Yes, your Honor.
The Court: And you knew at the time the man was already indicted?
The Witness: Yes, your Honor.”
The Assistant District Attorney testified he could not recall whether or not he had been told that Mr. Santos had been indicted. He testified he had taken many felony statements but this was the first one in which he learned after taking the statement that the witness had previously been indicted. The felony statement shows that the' defendant was never told he was under indictment.
The Miranda counsel warnings were as follows:
"Question: Do you understand that you have a right to have a lawyer here now or at any time in the future before you answer any questions? Do you understand that?
Answer: Yes.
Question: If you can’t afford a lawyer then the courts will give you a lawyer free. Do you understand that?
Answer: Yes.
Question: Do you know that if you do say anything it can be used against you in court? Do you understand that?
Answer: Yes.
Question: Are you willing to answer my questions?
Answer: Yes.”
The court asked the witness if in his opinion informing the accused he had already been indicted would have any bearing on the question of a knowing waiver.
"The Witness: Yes, I understand. Yes, I think it might make some difference.
The Court: What difference do you think it would make?
The Witness: I don’t know because I don’t know what effect it would have on a particular defendant. I could appreciate *605 that it might have some effect on a particular individual, but I’m not aware, at least my understanding of the law at this point is that there is no obligation at that stage of the proceeding to inform.
The Court: At which stage?
The Witness: At the moment of the arrest.
The Court: After indictment.
The Witness: After indictment, at that point of the existence of an indictment * * * I don’t know of any obligation any legal obligation until arraignment to inform the defendant that he has been indicted.”
Mr. Justice Brennan in United States v Wade (388 US 218) stated (p 224) that today’s law enforcement machinery involves critical confrontations of the accused and the prosecution in pretrial proceedings "where the results might well settle the accused’s fate and reduce the trial itself to a mere formality.” Recognizing the realities of modern criminal proceedings, Mr. Justice Brennan stated (p 225) that the thrust of the court’s cases dealing with Sixth Amendment claims was that Sixth Amendment sanctions attached at the moment a critical stage in the criminal proceeding was reached. "The plain wording of this guarantee encompasses counsel’s assistance whenever necessary to assure a meaningful 'defense.’ ” The point at which an indictment is handed down is certainly a critical stage. The court distinguished the preindictment decision (Miranda v Arizona, 384 US 436) stating that Miranda applied to counsel in custodial situations to safeguard the Fifth Amendment privilege against self incrimination.
In Kirby v Illinois (406 US 682), Mr. Justice Stewart again emphasized the distinction between preindictment Miranda cases and postindictment Sixth Amendment cases by stating that in Wade and Gilbert: "this Court held 'that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth [and Fourteenth] Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications’ * * * We note at the outset that the constitutional privilege against compulsory self-incrimination is in no way implicated here. The Court emphatically rejected the claimed applicability of that constitutional guarantee in Wade itself’ (pp 683, 687).
*606 "It follows that the doctrine of Miranda v. Arizona * * * has no applicability to the issue before us; for the Miranda decision was based exclusively upon the Fifth and Fourteenth Amendment privilege against compulsory self-incrimination, upon the theory that custodial interrogation is inherently coercive” (p 688).
Mr. Justice Stewart went on to say (p 688): "The Wade-Gilbert exclusionary rule, by contrast, stems from a quite different constitutional guarantee — the guarantee of the right to counsel contained in the Sixth and Fourteenth Amendments. Unless all semblance of principled constitutional adjudication is to be abandoned, therefore, it is to the decisions construing that guarantee that we must look in determining the present controversy.”
There is a valid and compelling law enforcement objective in questioning those who have information about an unsolved crime. The job of the police is to solve crimes and interrogation is one of the most effective means to that end. This primary law enforcement role must be balanced against the Fifth Amendment right against compulsory self incrimination. During this stage of investigatory interrogation there are no Sixth Amendment rights. Miranda v Arizona balanced the public interest in investigative interrogation against the individual Fifth Amendment right against compulsory self incrimination and mandated a series of guidelines fashioned to inform the individual undergoing investigative interrogation of his Fifth Amendment rights. After being so informed the individual could in fact and in law make a voluntary and knowing waiver of those rights.
When the thrust of the interrogation is no longer investigative, when it takes place as in the instant case postindictment, a different cluster of constitutional values comes into play. Once a person has been indicted by the Grand Jury, the law of this State declares that the prosecution has presented such a quantum of evidence against the accused that if the evidence is not controverted, a petit jury would have sufficient basis to convict. The handing down of an indictment necessarily terminates the public interest in solving a crime and gives rise to the public interest in assuring a fair trial to the accused.
One must then balance the interrogation process, postindictment, in terms of the competing interests of law enforcement *607 and the accused. The balance wheel between these competing interests is the constitutional gloss of the Sixth Amendment.
The burden upon the prosecution, under our system of justice, is to prove the guilt of the accused beyond a reasonable doubt. The accused has no burden to prove his innocence. Nor is the accused under any obligation to co-operate with the prosecution.
The handing down of an indictment places the prosecution in a jurisprudential position diametrically opposed to the position of the accused. No amount of integrity, good faith or solicitous concern for the rights of the accused can move the posture of the prosecutor one degree closer to the accused than arm’s length. That is the nature of the adversary system.
It is incongruous to impart into that system a rule of law permitting the prosecutor to elicit from the accused a waiver of Sixth Amendment rights without requiring the prosecutor to explicitly inform the accused what those rights are. As the Miranda court fashioned a litany to inform one under interrogation of his Fifth Amendment rights before a claim of waiver could be made — is it any less constitutionally mandated that an accused be informed of his Sixth Amendment rights before a claim of waiver can be made? It is only then that the accused is in a position — if he chooses — to make a knowing and intelligent waiver.
It is precisely in this context that this court finds that Miranda warnings based on Fifth Amendment, preindictment investigative interrogation are inadequate to secure a knowing and intelligent waiver of Sixth Amendment, postindictment rights.
The prosecution must establish, as a threshold evidentiary showing, that it was brought home to the accused that he was arrested on a warrant commanding that he be brought before a court for arraignment on an indictment. He must be told of the content of the indictment. He must be told that he has an absolute right to counsel and if he is indigent the court will appoint counsel for him. He must be told that if he wishes to make a statement before he is taken to court, whatever he says will be used to prove his guilt of the charges in the indictment.
All of this verbiage is directed toward the elucidation of a simple legal proposition:
*608 1. A person in custody cannot waive a right he does not know.[1]
2. After an indictment the prosecution is placed in an adversary role vis-á-vis the accused.
3. There is no valid public interest in the prosecutor questioning the accused incommunicado for the sole purpose of ensuring the success of the prosecution.
4. If the accused wishes to waive his Sixth Amendment rights, the prosecution has a great evidentiary burden of proving he brought home to the accused the nature of his Sixth Amendment rights and the accused made a knowing and intelligent waiver.
This court is not unmindful of the apparent appellate conflict on the issues raised herein. In People v Lopez (28 NY2d 23) the Court of Appeals dealt with a murder indictment in which the defendant, after being given Miranda warnings — but not told he had been indicted, gave an inculpatory statement which was admitted at his trial. The majority held that there had been an effective waiver. A strong dissent held that one could not measure Sixth Amendment rights in a Fifth Amendment mold. Certiorari was denied (404 US 840).
The matter then went by Federal habeas to the Southern District of New York where Judge Frankel granted the petition and directed the petitioner be released unless granted a new trial within 60 days. (United States ex rel. Lopez v Zelker, 344 F Supp 1050.) Judge Frankel held that the conclusion of the dissent in the Court of Appeals must be adopted as a matter of Federal constitutional law. That the Sixth Amendment and not the Fifth Amendment was the proper measure of the rights of the defendant. Miranda warnings being insufficient, the defendant did not make a knowing and intelligent waiver. The Second Circuit affirmed without opinion (465 F2d 1405).
People v Wooden (31 NY2d 753) involved another postindictment interrogation. The defendant therein was advised he had been indicted for murder. He was given Miranda warnings, a statement taken and convicted. Conviction was affirmed, no opinion. Chief Judge Fuld, and Judges Burke and Breitel concurred (p 754) "on constraint of People v. Lopez (28 N Y 2d *609 23, cert. den. 404 U.S. 840; but see United States ex rel. Lopez v. Zelker, 344 F. Supp. 1050, affd. 465 F. 2d 1405), insofar as the appellant’s postindictment statement has been held admissible.”
Wooden also took the Federal habeas corpus route — United States ex rel. Wooden v Vincent (391 F Supp 1260).
The facts of Wooden, as set forth in the opinion of Judge Duffy are clearly distinguishable from the instant case and People v Lopez. The defendant in Wooden was told he had been indicted. When told by the officer: " 'You don’t have to say anything. Anything you say can be used against you in court.’ The petitioner replied T know my rights’ ” (p 1261). The officer continued: " 'You’re entitled to have a lawyer at any time and if you can’t afford one the County will get you one.’ To this the petitioner replied T don’t want a lawyer.’ ”
Another officer again informed petitioner of his indictment and after being interrupted by petitioner again stating that he knew his rights, the officer continued in reading the balance of the Miranda warnings. When asked if he wanted to talk without an attorney, the petitioner replied " 'yes * * * I’ll talk to you * * * I tried to tell you before’ ” (p 1262).
Clearly the Wooden court was dealing with an accused who was almost overbearing in proclaiming his knowledge of his rights and his desire to talk.
A more important element in Wooden is the posture in which the case was presented. Defense counsel, realizing his defendant proclaimed knowledge of his rights, took the position that Sixth Amendment rights are not subject to waiver.
The court disposed of that argument by saying (p 1263): "Here there was such a clear explicit and intelligent waiver, and therefore no error was made in admitting petitioner’s post-indictment statements.”
Wooden was affirmed without opinion by the Second Circuit. The tension between Lopez and Wooden is more apparent than real. Wooden would have talked no matter what rights were read to him and the argument that Sixth Amendment rights cannot be waived has no merit. Lopez on the other hand was alleged to have waived rights where the record was silent as to his knowledge of those rights.
This court finds that since the defendant Santos was never told he had been indicted and since he had never been warned of his Sixth Amendment rights he was in no position to make *610 a knowing and intelligent waiver of those rights and the statement offered against him is suppressed.
Miranda warnings specifically designed to protect Fifth Amendment rights are constitutionally ineffective to evoke an intelligent and knowing waiver of Sixth Amendment mandates.

. Schneckloth v Bustamonte (412 US 218) is not inapposite. The Schneckloth court specifically excepted the custodial defendant from its rule that knowledge of the right is not a prerequisite to valid waiver.