Hon. Robert C. Morris City Attorney City of Glens Falls
This is in response to your request for an opinion on whether the City of Glens Falls has the authority to regulate the use of portions of a City park located in the adjacent Town of Queensbury and, if so, whether City police or Town police may enforce the City park ordinance in the area in question. You have further requested us to advise you in which court, City or Town, prosecutions for violations of the City park ordinance, committed in those portions of the park outside the City limits, may be maintained.
Although your letter states that the City's authority to regulate parklands — set forth in the City Charter — does not extend to such lands outside the City, you have advised us that the City Charter is silent on this point. It is, therefore, necessary initially to consider whether the City has authority to regulate portions of a City park situated outside the City limits.
Since General City Law, § 20 specifically and broadly provides that "every city is empowered [to] take, purchase, hold or lease real * * * property within and without the limits of the city" (subsection 2), "to lay out, establish, construct, maintain and operate * * * parks" (subsection 7) and "[t]o regulate by ordinance any matter within the powers of the city and to provide penalties, forfeitures and imprisonment to punish violations thereof" (subsection 20), it is fair to conclude that the City of Glens Falls has the authority to extend its park ordinance to regulate portions of the City park located in the adjacent Town. While we find no case directly supporting this conclusion, there is authority, in a parallel situation involving municipal water systems, for the conclusion that a municipality may regulate its property located outside its boundaries. As stated in City of Poughkeepsie v VassarCollege, 85 Misc.2d 604, 606 (Sup Ct, Dutchess Co, 1961), where "the Legislature has empowered the plaintiff [city] to extend its water system beyond the municipal boundaries[,] it is a fair inference that the Legislature intended that the powers granted * * * for the adoption of rules and regulations * * * appl[y] equally to intramunicipal consumers as well as the extramunicipal consumers." We see no reason why this "fair inference" should not apply to parklands acquired under similar statutory authority.
With respect to the authority of City police to enforce the City's park ordinance outside the City's boundaries, the Criminal Procedure Law provides that a police officer may arrest a person for a petty offense only when the offense is committed within the geographical area of the officer's employment (CPL § 140.10 [2] [a]; People vPollaci, 68 A.D.2d 71 [2d Dept, 1979]). Under similar circumstances, a police officer may issue an appearance ticket (CPL, § 150.20 [1];Farkas v State of New York, 96 Misc.2d 784 [Ct of Claims, 1978]). The Criminal Procedure Law defines the "geographical area of employment" as the political subdivision, be it county, city, town or village which has established the agency employing the police officer (section 1.20 [34-a] [b]). Thus, while acting in their official capacity, the City police lack the authority to enforce the City park ordinance outside the City limits.
While those portions of the City park located in the Town are obviously within the geographical area of employment of the Town police, the question arises as to whether Town police can enforce a park ordinance enacted by the City. The Criminal Procedure Law expressly provides that, subject to geographical limitations of authority, "a police officer may arrest a person [without warrant] for any offense * * * committed * * * in his presence" (section 140.10 [1] [a] [emphasis supplied]) or may issue an appearance ticket whenever "authorized pursuant to section 140.10 to arrest a person without a warrant for an offense other than a felony" (section 150.20 [1]). Thus, the Town police have the authority to enforce the City park ordinance in the portion of the park outside the City limits.
We also call your attention to CPL, § 140.30 (1) (b), which provides that "any person may arrest another person * * * for any offense when the latter has in fact committed such offense in his presence". This power of a "citizen's arrest" has been upheld for lesser offenses such as traffic violations (People v Nagell, 23 Misc.2d 452 [1960]). It would appear, then, that under section 140.30 (1) (b), the City may employ a park caretaker who, as a private person, could make an arrest without warrant for violation of a park regulation. This arrest need only be made in the county in which the offense was committed (CPL, § 140.30 [2]).
Similarly, City police, patrolling the City and adjacent Town portions of the park during the course of their normal duties, as private citizens could enforce the City park ordinance outside the territorial limits of the City. In this respect, the question posed by you regarding the territorial jurisdiction of the City police is not unlike the situation discussed in an earlier opinion of this office (1935 Op Atty Gen 45), wherein the Palisades Interstate Park Police, statutorily limited in their powers to the territory of the park, were faced with supervising the daily arrival and departure, from points outside the park, of several thousand men working on relief projects within the park. Thus, the question arose as to the authority of the police to function outside the limits of their territorial jurisdiction. The Attorney General there ruled that arrests made for acts committed in the presence of a park officer outside the park were proper since in this instance a private person could legally make an arrest (citing CCP, § 183 [now CPL140.20]).
With respect to the court(s) in which the City park ordinance could be enforced, it will not be enforceable in the City Court since territorial jurisdiction of municipal courts is generally confined to the corporate limits (People v Osborne, 29 N.Y.2d 250 [1971]; People v Epstein,47 A.D.2d 661 [2d Dept, 1975], citing Uniform Justice Court Act, §2001). While City park property located in the Town of Queensbury is within the geographical jurisdiction of the Town Court, the question arises as to whether the Town Court can enforce a park ordinance enacted by the City. Under the Criminal Procedure Law, Town Courts are local criminal courts (section 10.10 [3] [d]) having "trial jurisdiction of all offenses other than felonies [and] exclusive trial jurisdiction of petty offenses" (section 10.30 [1] [a]). Since a "`petty offense' means a violation" (section 1.20[39]), and violation of the City park ordinance is in issue, the Town Court appears to have the geographical and subject matter jurisdiction of violations of the City park ordinance on City park property located within the Town.