THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VITO POLLACI, Appellant.

Second Department, May 7, 1979

## APPEARANCES OF COUNSEL

*Frank A. Lopez* for appellant.

*Eugene Gold, District Attorney (Laurie Stein Hershey* of counsel), for respondent.

## OPINION OF THE COURT

*Per Curiam.*

The appellant, Vito Pollaci, and the former codefendant, Anthony Raiola, were arrested for attempted robbery and a traffic infraction. The police made a contemporaneous warrantless search of their persons and of the vehicle they occupied. The issue on the appeal is whether the court properly denied their motion to suppress the physical evidence found in the vehicle, notwithstanding the court's finding that the arrest for attempted robbery was without probable cause. The judgment should be affirmed.

Although the police were aware for some weeks that the Chrysler automobile in which appellant and Raiola were observed bore the wrong license plate, they took no action with respect to this traffic infraction and continued to keep the two men under surveillance. One evening, Pollaci and Raiola drove up to a supermarket shortly after it closed, alighted from their car and walked up to the store. Raiola placed his hands on the door and the appellant stood next to him. At the sight of an approaching patrol car, the defendants walked to the Chrysler and entered it. Before they could drive off, they were arrested for attempted robbery and for operating an improperly registered vehicle. A contemporaneous limited search of their persons and of the Chrysler disclosed certain physical evidence. The arrests and the search were made without a warrant. Subsequently, Pollaci and Raiola were jointly indicted on two counts of criminal possession of a weapon in the third degree and Pollaci alone was indicted for criminal possession of a forged instrument in the second degree. After their motion to suppress the physical evidence and the postarrest statements attributed to them was denied, the appellant pleaded guilty to criminal possession of a weapon in the third degree. Appellant contends that the

branch of the motion to suppress the physical evidence should have been granted.

The sole witness at the suppression hearing was Detective Thomas Grandinetti, who gave the following testimony: He first saw Pollaci and Raiola in the early part of December, 1976 and they were together. On December 14 he learned that the license plate carried by the 1966 Chrysler automobile driven by the appellant actually belonged to another vehicle, a 1969 Mercury automobile registered in the name of one Sal De Martino. Thereafter, the witness saw the defendants almost every day with the exception of his days off. Although he saw the appellant driving the Chrysler a number of times, he never stopped or questioned him. On February 1, 1977, at approximately noon, Grandinetti observed appellant, Raiola and a third male, known as "Baldy", drive up in the Chrysler to the Waldbaum's supermarket located at Brighton 11th Street and Cass Place in Brooklyn. Appellant and Raiola entered the store, stayed about 15 minutes and came out empty-handed, while Baldy remained with the car in the parking lot.

On February 4, 1977, at about 7:15 P.M., the three men were observed again in the vicinity of the supermarket. When first seen, the Chrysler, with the three men inside, kept circling the parking lot and the adjacent block. The defendant then alighted from the car at a gas station located at the same intersection as the supermarket and examined a dirt roadway used as a parking area and as an entrance to and exit from the supermarket.

On the evening of the arrest, February 5, 1977, Grandinetti was stationed, equipped with a pair of binoculars and a shotgun, in a truck approximately 150 feet away from the entrance door of the Waldbaum's supermarket. Approximately nine other police officers were also present at the site, with a sergeant in charge. At about 7:45 P.M., appellant and Raiola drove into the parking lot in the Chrysler automobile. The supermarket had just closed but the lights were still on and six employees were inside. Appellant and Raiola got out of the car and approached the entrance. Raiola placed both hands on the door with his face close to the glass. Appellant was standing next to him looking down the side of the building.

At that point a radio patrol car came around the corner of the street that appellant was facing. Through his binoculars, Grandinetti observed appellant tap Raiola on the back and

they both immediately turned and walked in the direction of their parked car. The recorder of the radio car was pointing at the two men and the radio car proceeded to move in their direction. The sergeant in charge ordered the witness to "take" the defendants. The defendants had just gotten into the Chrysler, appellant in the driver's seat, when Grandinetti and his partner pulled their van in front of the Chrysler and jumped out. Displaying his shield in one hand and the shotgun in the other, Grandinetti ordered the defendants out of the car and informed them that they were under arrest for attempted robbery and for operating an improperly registered vehicle. The defendants were immediately subjected to a "frisk". A hard object in Raiola's pocket proved to be a pair of handcuffs wrapped in a rag. Grandinetti then looked under the seat of the Chrysler and found a revolver and a homemade bludgeon under the driver's seat. The defendants were taken to the precinct and the Chrysler was seized and vouchered. The arrests and the search were made without warrants.

At the station house, a forged driver's license bearing the name of Anthony Longo was found in appellant's possession. After appellant was advised of his rights, he stated that he purchased the automobile, the gun and the handcuffs two or three weeks ago, but knew nothing about the bludgeon; that he did not register the car; that he had placed his brother-in-law's plates on it; that he had found the license; and that he had gone to the store, Waldbaum's, to purchase certain items.

At the conclusion of the hearing, the court found that while Pollaci's arrest for attempted robbery was not based on probable cause, there was probable cause for the arrest as to the improperly registered vehicle and held that the contemporaneous search was proper as an incident to that arrest.

The appellant argues that the warrantless search of the vehicle was improper, claiming that the police lacked probable cause to arrest him for attempted robbery and that the arrest for operating an improperly registered vehicle was merely a pretext to justify the search. He urges further that the police lacked grounds for a stop and frisk pursuant to CPL 140.50.

A police officer may arrest a person without a warrant for:

"(a) Any offense when he has reasonable cause to believe that such person has committed such offense in his presence; and

"(b) A crime when he has reasonable cause to believe that

such person has committed such crime, whether in his presence or otherwise." (CPL 140.10, subd 1.)

As the People properly concede, the conduct observed did not constitute attempted robbery. There was no overt act which went beyond the state of mere preparation and the law does not punish evil thoughts (see *People v Bracey,* 41 NY2d 296, 300). When the defendants were interrupted by the arrival of the police car, they had gone no further than to stand at the entrance of the supermarket after it closed, Raiola looking through the glass and appellant keeping watch. Driving an improperly registered vehicle with improper license plates is a traffic infraction, not a crime (Vehicle and Traffic Law, §§ 155, 401, subd 1; § 402). There was therefore no justification for the arrest under CPL 140.10 (subd 1). However, the police did have a right to arrest the appellant under subdivision 2, which provides that a police officer may arrest a person without a warrant "for a petty offense" since the Legislature has expressly provided that the term "offense" in that subdivision includes a traffic infraction (Vehicle and Traffic Law, § 155). It is not disputed that the appellant was operating an improperly registered vehicle.

The appellant claims that the search incidental to the arrest was illegal because the arrest was a pretext to search for evidence. The cases he cites *(People v Flanagan,* 56 AD2d 658; *Amador-Gonzalez v United States,* 391 F2d 308; *People v Troiano,* 35 NY2d 476) are inapposite on their facts. The police here did not take advantage of a minor traffic infraction, such as double parking, simply because they had a spur-of-the-moment hunch that the occupants of the vehicle had contraband in their possession. On the contrary, the police had been watching these defendants for weeks and their conduct on February 1 and 4 can only be described as "casing" the Waldbaum's supermarket. Such conduct has been recognized as part of a "familiar pattern common to robberies" *(People v Bracey,* 41 NY2d 296, 302, *supra; People v Leichtweis,* 59 AD2d 383, 389). Nor should the police be faulted for their failure to take action with respect to the traffic offense when they first became aware of it. Due process does not require the government to file charges promptly once it has assembled sufficient evidence to prove guilt beyond a reasonable doubt, if its investigation of the entire criminal transaction is not complete *(United States v Lovasco,* 431 US 783, 792-795).

On the appeal, the People refer to the contemporaneous search of the car as "illegal". (They ground their argument against suppression on the inevitable discovery exception *[People v Fitzpatrick,* 32 NY2d 499, cert den 414 US 1033].) We disagree with the People and hold that the limited search was proper, both as an incident to the arrest and under the statute (CPL 140.50). In *People v Troiano* (35 NY2d 476, *supra),* the defendant was arrested pursuant to a warrant for driving with a suspended or revoked license, which is a misdemeanor. He was frisked and a hard object in the waistband of his trousers was found to be a loaded revolver. In upholding the search, the Court of Appeals said (p 478):

"So long as the person is being taken into custody, he has lost whatever interest in privacy he had before arrest, the taking into custody itself being the grossest intrusion upon his privacy (see *United States v. Robinson,* 414 U. S. 218, 237 [concurring opn. by Mr. Justice POWELL]; *People v Perel,* 34 N Y 2d 462, 467). Moreover, revolvers and pistols are not the only deadly implements; there are razor blades, flat knives, poisons, the hatpins of another day but still available, letter bombs, plastic bombs, and similar soft and 'hard' objects with lethal potential. Indeed, even the pistol may come in form difficult of discovery by frisk, namely, the small flat .25 or .22 calibre automatic pistol. Still further, there is no doubt that once the arrested person is taken to the place of detention a full inventory search is merited for his protection and that of his property, as well as for the safety of his custodians and fellow prisoners *(People v Perel, supra,* at p. 468).

"There is, perhaps, an area of traffic violation 'arrest' where a full-blown search is not justified, but it might seem to be confined to a situation where an arrest was not necessary because an alternative summons was available or because the arrest was a suspect pretext (cf. *People v. Marsh,* 20 N Y 2d 98; *People v. Adams,* 32 N Y 2d 451, 455, and dissenting opn. at pp. 456-457; but see A.L.I., Model Code of Pre-Arraignment Procedure [O.D. No. 1, 1972], § SS230.2, including, however, the accompanying note).

"In short, so long as an arrest is lawful, the consequent exposure to search is inevitable. If the unnecessarily intrusive personal search is to be restricted, the cure must be by limiting the right to arrest or to take into custody. No other practical or theoretical limitation seems acceptable if the life and limb of the police officer or the person arrested is to be

safeguarded (see A.L.I., Model Code of Pre-Arraignment Procedure, § SS230.2, including note and commentary at pp. 184-185)." (See, also, Ann 10 ALR3d 314, 328-331, 335-338, §§ 5, 7, which concludes that if the arrest for a traffic violation is lawful, a contemporaneous search for weapons and the means of escape is valid.)

In a concurring opinion in *Troiano,* in which Judges WACHTLER and GABRIELLI concurred, Judge RABIN noted that while the case on which the majority relied *(United States v Robinson,* 414 US 218) held that a full search of a person incident to any lawful custodial arrest was reasonable under the Federal Constitution, a search based on an arrest for a mere traffic infraction had been held to be illegal in this jurisdiction (citing *People v Marsh,* 20 NY2d 98 and *People v Adams,* 32 NY2d 451), not only because it exceeded Federal constitutional limits on search and seizure but also because it exceeded State constitutional limits and the legislative intent. He stated (pp 479-480): "The classification of the offense as a traffic 'infraction', as opposed to the 'crime' categories of misdemeanor and felony (see Vehicle and Traffic Law, § 155), renders impermissible any search incident to arrest 'regardless of whether the arrest is made on the scene or pursuant to a warrant, unless the officer has reason to fear an assault or probable cause for believing that his prisoner has committed a crime.' *(People v. Marsh, supra,* at p. 102.) The warrant authorized Marsh's arrest for speeding, a traffic infraction not a crime, and since there was no reason for the arresting officer to fear an assault, or probable cause to believe Marsh had committed a crime, no search for a weapon was authorized. (See, also, *People v. Coleman,* 24 N Y 2d 1005.)" Judge RABIN concluded (p 483) that "an arrest based solely on a traffic infraction, will not, without more, authorize a frisk for weapons, whether the arrestee is taken into custody or not". Even under the holding in *People v Marsh (supra,* p 102), an exception is made where the officer "has reason to fear an assault". The arresting officers here had good reason to fear an assault as the defendants were obviously planning a crime involving the supermarket. When the appellant spotted the patrol car, he alerted the codefendant and they immediately went to their car. The contemporaneous search of the defendants was not a full search but a frisk and the search of the vehicle was limited to looking under the front seat. (The false license on appellant's person was not discovered until the

appellant removed the contents of his pockets at the precinct.) Moreover, the frisk of the codefendant disclosed a pair of handcuffs. Even if looking under the car seat was not justified before, it became so with the discovery of the handcuffs.

The arrest and limited search were also proper as a "stop and frisk" (*Terry v Ohio,* 392 US 1; CPL 140.50). That statute authorizes a police officer to stop a person in a public place "when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor defined in the penal law, and may demand of him his name, address and an explanation of his conduct" and to search such person for a weapon if the officer "reasonably suspects that he is in danger of physical injury" (CPL 140.50, subds 1, 3).

The minimum requirement for a lawful detention stop is "a founded suspicion that criminal activity is afoot" (*People v Cantor,* 36 NY2d 106, 114). The question before the court is whether the police action was "reasonably related in scope to the circumstances which rendered its initiation permissible" (*People v De Bour,* 40 NY2d 210, 215). The circumstances which justified a limited search for weapons upon appellant's arrest for the traffic infraction justify the actions of the police when considered under CPL 140.50. Their knowledge that the car carried the wrong license plates, their prior observations of the defendants, the defendants' presence at the store entrance after it closed and the defendants' attempt to flee when the patrol car approached, gave rise to a reasoned suspicion that the defendants were planning a robbery and that they were armed. Since the defendants succeeded in getting into their car before they were stopped, the police had reason to believe that the defendants had weapons either on their persons or readily accessible and that the officers were in danger of physical injury. In *People v Troiano* (35 NY2d 476, 482-483, *supra)* Judge RABIN considered the competing considerations that law-abiding and nondangerous persons not be subjected to the indignities of a search and that police officers not sustain physical injuries, saying: "There are also the dangers that the police may on occasion use the traffic offense merely as a pretext to conduct an otherwise illegal search, and that searches will be conducted selectively, based, for example, on factors such as social status. On the other hand, if the police are imprudently forbidden to conduct at least a search for weapons, there is the real possibility that physical

injury, including death, may result to a police officer. Even ignoring factors which might be diminished by proper control, such as pretext and selectivity, the countervailing forces represent very strong interests of society. *However, weighing the results, if an error in balancing is to be made, I prefer it to be on the side of security to the police officer."* (Emphasis added.)

The weapons, a revolver and a homemade bludgeon, were not found on the persons of the defendants but in the car. With respect to the search of an automobile, the Supreme Court of the United States has said *(South Dakota v Opperman,* 428 US 364, 367):

"This Court has traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment. Although automobiles are 'effects' and thus within the reach of the Fourth Amendment, *Cady v. Dombrowski,* 413 U.S. 433, 439 (1973), warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. *Cardwell v. Lewis,* 417 U.S. 583, 589 (1974); *Cade v. Dombrowski, supra,* at 439-440; *Chambers v. Maroney,* 399 U.S. 42, 48 (1970).

"The reason for this well-settled distinction is twofold. First, the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. *Carroll v. United States,* 267 U.S. 132, 153-154 (1925); *Coolidge v. New Hampshire,* 403 U.S. 443, 459-460 (1971). But the Court has also upheld warrantless searches where no immediate danger was presented that the car would be removed from the jurisdiction. *Chambers v. Maroney, supra,* at 51-52; *Cooper v. California,* 386 U.S. 58 (1967). Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office."

In that case, the Supreme Court upheld the constitutionality of the routine inventory search of automobiles lawfully impounded for parking violations. Assuming, *arguendo,* that the contemporaneous search was illegal, the weapons would be admissible under the inevitable discovery exception to the exclusionary rule (see *People v Fitzpatrick,* 32 NY2d 499, *supra).* Upon appellant's arrest for driving an automobile with plates which belonged to another vehicle, the car would have

been taken into custody and the weapons found on a routine inventory search.

For all the foregoing reasons, the motion to suppress the physical evidence was therefore properly denied and the judgment should be affirmed.

HOPKINS, J. P., DAMIANI, TITONE and MARTUSCELLO, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered October 4, 1978, affirmed.

The case is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (subd 5).