OPINION OF THE COURT
Anne G. Feldman, J.
A police officer on routine patrol came upon an unoccupied double-parked car. A check with police records, prompted by an expired registration sticker, revealed that the license plates had been reported stolen. The four defendants boarded the car and were driving away when the police stopped them. The defendants were ordered out of the auto, and Carey Nelson, the driver, was arrested. A search of the unlocked glove compartment disclosed a loaded .38 caliber automatic pistol, and the *584 passengers were arrested. The defendants are charged with possession of the handgun. Defendants moved to suppress the gun as evidence at trial.
During a calendar call, the court indicated it was granting defendants’ “motions to dismiss.” Later the same day the court, sua sponte, reviewed the several motions which had been before it and realized it had misspoken in dismissing the indictment. It also determined that applicable appellate case law mandated denial of the suppression motions. Accordingly, the court, after prompt notification to counsel, restored the case to its calendar.
Defendants challenge the continued exercise of jurisdiction by this court over the indictment and, in the alternative, move to dismiss the indictment on the grounds of legal insufficiency of the charge to the Grand Jury.
This opinion will address this court’s power to exercise jurisdiction over an indictment dismissed by the court’s own inadvertent error, the court’s grounds for denying defendants’ motions to suppress the seized evidence, and the adequacy of the charge to the Grand Jury.
JURISDICTION
On August 3, 1984, this case was called in the Calendar Part of Criminal Term (Complex A) for a decision on defendants’ several motions to suppress the introduction into evidence of the gun recovered. After a bench conference at which only the District Attorney and one defense counsel were present, the court stated it was granting the “motion to dismiss the complaint based on the lack of probable cause and justification for the police officer to search the automobile”. The court indicated a written opinion would follow, noting “this is not final against anyone”, a reference to the issuance of a formal written “order” (see, CPL 450.20).
At the end of the day, with the press of the busy calendar behind, the court reviewed further the relevant legal authorities pertaining to the motions to suppress and decided it had erred in granting the motions. More importantly, the court also realized that pronouncing the indictment dismissed was premature even if the motions to suppress had been properly granted. The motions before the court had been to suppress the admission of the gun as evidence at trial. A favorable ruling on that motion would not automatically have resulted in termination of the prosecution (see, CPL 450.50).
The court immediately informed counsel by mail both that it was reconsidering its decision on the motions to suppress and *585 that the indictment was still before the court. Defendants have challenged the court’s jurisdiction and hence its power to restore the case to the calendar, claiming that the indictment was irrevocably dismissed by the court’s oral pronouncement on August 3. This claim is rejected.
In restoring the case to the calendar this court was exercising its recognized “inherent power” to correct its own mistakes. “The inherent power of a court to correct its own errors extends to a statement of even formal pronouncement made by a court which may create ‘apparent ambiguity’ but ‘which is, plainly, the result of some inadvertence on [the Judge’s] part, and which our reason tells us is a mere mistake’ ” (People v Minaya, 54 NY2d 360, 365 [1981], cert denied 455 US 1024 [1982]). CPL 210.20 delineates the only grounds upon which an indictment may be dismissed. A dismissal based upon an illegal search is not among them.
It is clear that a “dismissal without legal basis or justification” can be rectified by a trial court (Matter of Pastrana v Baker, 77 AD2d 653, 654 [2d Dept 1980], affd 55 NY2d 315 [1982]). Defendants’ reliance upon the memorandum decision in Matter of Bishop (Vinik) (NYLJ, Jan. 24, 1984, p 13, col 4 [2d Dept]) is misplaced. In that case the trial court on the motion of the prosecution restored an indictment which had been dismissed on its motion some weeks earlier. Thus, the court in Vinik was faced not with judicial error but with the use of judicial power to correct prosecutorial error.
Two recent Court of Appeals decisions outline the limits of a trial court’s inherent power. Matter of Campbell v Pesce (60 NY2d 165 [1983]) held that the Trial Term had no inherent power to grant the prosecution’s motion to set aside an illegal plea, entered with its consent several weeks earlier, where the defendant had commenced serving the agreed sentence. People v Carter (63 NY2d 530 [1984]) held that a court does not have inherent power to change a verdict of guilty to not guilty based on a reassessment of the facts, holding that to be a correction of substance and not a ministerial act.
The Court of Appeals has recognized that a trial court does have authority to correct patent clerical errors as in People v Minaya (supra), or to correct errors where the Trial Judge had “merely misspoke[n]”, as in People v Wright (56 NY2d 613, 614 [1982]). (See, People v Carter, supra, at p 538; Matter of Campbell v Pesce, supra, at p 169.) It is in the exercise of this power that the court is correcting its inadvertent statement purporting to dismiss the indictment.
*586 MOTION TO SUPPRESS
Defendants move to suppress the handgun claiming that its discovery was the fruit of an illegal search and seizure (see, Wong Sun v United States, 371 US 471 [1963]).
A threshold question is standing. The driver’s assertion of a proprietary interest in the car and a legitimate expectation of privacy in its glove compartment is clear. He has standing to challenge the legality of the search (see, Rakas v Illinois, 439 US 128, reh denied 439 US 1122 [1978]; United States v Salvucci, 448 US 83 [1980]; People v Ponder, 54 NY2d 160 [1981]). While none of the three passengers demonstrated a reasonable expectation of privacy in the car or glove compartment at the time it was searched (see, People v Lerhinah, 90 AD2d 74 [2d Dept 1982]), they, as well as the driver, have standing to challenge the legality of their stop and if successful to challenge the admissibility of the gun as a fruit thereof (see, People v Smith, 106 AD2d 525 [2d Dept 1984]; see also, People v Jones, 125 Misc 2d 91 [Sup Ct, NY County 1984]).
THE STOP
The stop of an automobile constitutes a seizure under the 4th Amendment (see, Delaware v Prouse, 440 US 648 [1979]).
The 4th Amendment and its counterpart in NY State Constitution, article I, § 12 are meant to prevent “wholesale intrusions upon the personal security of our citizenry” and to avoid subjecting innocent persons to “the harassment and ignominy incident to involuntary detention” (Davis v Mississippi, 394 US 721, 726 [1969]; see also, Dunaway v New York, 442 US 200, 214-215 [1979]).
An examination of the predicate for police action is necessary to determine whether the extent of the intrusion on the individual is justified and therefore reasonable (see, People v Stewart, 41 NY2d 65, 66 [1976]).
The stop here was predicated upon the police officer’s earlier observations and information that the automobile was illegally parked with an expired registration sticker, and that it displayed stolen license plates. Each of these justified the stop of the vehicle.
The incidental detention of the three passengers was unavoidable and reasonable. While their detention constitutes a “seizure”, it is substantially less intrusive than an arrest, making it appropriate to balance the incidental violation of privacy and freedom of movement against the opposing interests in crime prevention and detection and in the police officer’s safety (see, *587 Terry v Ohio, 392 US 1, 22-27 [1968]; Dunaway v New York, 442 US 200, 209 [1979], supra). The de minimus intrusion of being ordered out of the car is a “mere inconvenience [which] cannot prevail when balanced against legitimate concerns for the officer’s safety” (Pennsylvania v Mimms, 434 US 106, 111 [1977]). Thus, the passengers’ motion to suppress must be denied.
The vehicle’s operator was subject to arrest for the parking and registration infractions (Vehicle and Traffic Law § 155; CPL 140.10 [2]; People v Pollaci, 68 AD2d 71, 75 [2d Dept 1979]) as well as for the misdemeanors of unlawful appropriation of a license plate (Vehicle and Traffic Law § 403) and criminal possession of stolen property in the third degree (Penal Law § 165.40). Although his stop and arrest were proper, he may still challenge the weapon’s admissibility as the fruit of an unlawful search of the car’s glove compartment.
THE SEARCH
The police clearly had the right to impound and conduct an inventory search of an apparently unregistered, uninspected, and uninsured vehicle (see, People v Robinson, 36 AD2d 375, 379 [2d Dept 1971]; People v Sullivan, 29 NY2d 69, 77 [1971]; People v D'Abate, 37 NY2d 922, 923 [1975]). The standard for evaluating the propriety of an inventory search is its reasonableness (People v Gonzalez, 62 NY2d 386, 390 [1984]; see also, Illinois v Lafayette, 462 US 640 [1983]).
The search at the scene was entirely appropriate. The police are not required to remove a vehicle to the police station before executing an inventory search (see, People v Middleton, 50 AD2d 1040 [3d Dept 1975], affd 43 NY2d 703 [1977]). Such a requirement would make little common sense, expend additional enforcement time and energy without compensating protection or benefit to a defendant, and might expose innocent persons to greater unnecessary interferences in instances of lawful but unproductive searches (People v Kreichman, 37 NY2d 693, 700 [1975]).
Since administrative procedures mandate an inventory of an impounded car’s contents, there is no need to conduct a hearing to determine the actual police motive in searching the car. Controlling precedent holds that evidence obtained from illegal police conduct “is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence” (People v Fitzpatrick, 32 NY2d 499, 506, cert denied 414 US 1033 [1973]). The appropriate test is whether or not the unlawful conduct was a sine qua non of the *588 discovery (see, People v Fitzpatrick, supra, at p 507). “But when, as here, the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible” (Nix v Williams, 467 US_,_, 104 S Ct 2501, 2511 [1984]).
The discovery of the gun was “inevitable and incidental to the removal of the vehicle” from the public highway (People v Braan, 80 AD2d 920, 922 [2d Dept 1981]). It is “inconceivable that the complete inventory search at the precinct would have failed to uncover the evidence” and the doctrine of inevitable discovery compels denial of the motion to suppress (People v Turner, 91 AD2d 646, 647 [2d Dept 1982]).
In light of this conclusion, the court does not reach defendants’ other challenges to the propriety of the search.
THE GRAND JURY CHARGE
The weapon giving rise to the charges in this case was not found on any defendant’s person. Thus, in charging the Grand Jury on the applicable law, the Assistant District Attorney read them the statutory presumption that arises from the presence of a weapon in an automobile, as delineated in Penal Law § 265.15.
In presenting the case to the Grand Jury, the District Attorney must serve as its legal advisor. Although a Grand Jury “need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law” the District Attorney must provide the Grand Jury “with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime.” (People v Calbud, Inc., 49 NY2d 389,394-395 [1980].) The Grand Jury historically has protected citizens from unfounded and arbitrary accusations by the State. Where the District Attorney’s instructions are “so incomplete or misleading as to substantially undermine this essential function” the integrity of the Grand Jury has been impaired. (People v Calbud, Inc., supra, at p 396.)
The law regarding the presumption as to possession of a weapon in an automobile consists of both the statute creating the presumption and the case law construing and limiting the statute’s effect. In this court’s view, the reasoning in Sandstrom v Montana (442 US 510 [1979]) mandates not only that a petit jury be clearly instructed as to rebuttable nature of this presumption but that a Grand Jury be similarly advised (see, People *589 v Garcia, 103 Misc 2d 915, 918 [Sup Ct, Bronx County 1980]). Such an instruction was totally absent here.
In accord with what is apparently the general policy followed by the District Attorney’s office, the Grand Jury in this case was given only one general charge at the start of its term on the role of “presumptions”. This charge, set forth in its entirety herein, is virtually incomprehensible.
“During the course of the term you will have occasion to be charged, as you already have been, on ‘presumption.’
“A presumption is an inference which may be drawn from an ascertained set of facts. The inference is permissible once the basic facts, the fact which give rise to the presumption is established. As a general rule the effect of a presumption is to place the burden upon the adversary to come forward with evidence to rebut the presumption, that is to negate the existence of the presumed fact. It is for the Jury to determine whether there is evidence to rebut the presumption which is found to be believable and whether the evidence is sufficient to destroy the presumption. Even if the presumption has been overcome and ceases to exist in the case the fact or facts which give rise to the presumption still remains and may furnish the basis for a logical inference. A presumption is overcome when the evidence produced is substantial evidence to the contrary.
“Are there any questions?
“Juror: No”.
In order to adequately guide a Grand Jury, the instructions provided it must be comprehensible (see, Matter of Special Grand Jury Empanelled Feb. 14, 1978, 77 AD2d 199, 202 [4th Dept 1980]). While this instruction may upon very close examination and several rereadings cast some light upon what a presumption is, it certainly does not communicate to the Grand Jury that its use of a presumption is discretionary.* Moreover, when over two weeks later the Grand Jury here was charged on the weapon presumption, the assistant presenting the case neither made reference to the permissive nature of the presumption, nor reminded the jurors of the general charge on presumptions previously given.
There was no evidence before the Grand Jury that the defendants were engaged in a joint criminal enterprise at the time of their arrest. Only one weapon was found, and it was in a closed *590 container immediately accessible only to the two defendants in the front seat. Under these circumstances, the inadequacy of the instructions here may well have misled the Grand Jury into believing they were required to indict all the occupants of the car.
In this court’s view, the misleading nature of the Grand Jury instructions prevented the Grand Jury from properly assessing an essential element of the crime charged, i.e., possession. The defect in the charge renders the indictment legally insufficient (CPL 190.65 [1]) impaired the integrity of the proceeding and may have prejudiced the defendants (CPL 210.35 [5]).
Although this indictment must be dismissed, another Grand Jury, properly instructed on the law applicable to the facts in this case, may return a valid indictment against any or all of these defendants. Therefore, leave to re-present is granted and defendants are deemed to be held for further Grand Jury action (CPL 210.45 [9]).
The indictment is dismissed with leave to re-present.

 The permissive application of presumptions can be more simply and understandably presented (see e.g., Special Presumption Charge — Automobile, 3 CJI [NY] PL 265.15 [3], at 2224).