THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v J.R. COOPERAGE CO., INC., and GUSTAVE ROSENBERG, Respondents.

Second Department, May 4, 1987

8

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Peter H. Schiff, James A. Sevinsky, Nancy Stearns* and *James J. Periconi* of counsel), for appellant.

*Berle, Kass & Case (Michael B. Gerrar* and *Ralph E. Hallo* of counsel), for respondents.

**OPINION OF THE COURT**

WEINSTEIN, J.

Our resolution of the instant appeal hinges upon the proper interpretation of ECL 71-2715, which provides:

"No person shall:

"1. With intent that another person possess or dispose of hazardous wastes without authorization, solicit, request, command, importune or otherwise attempt to cause such other person to engage in such conduct; or

"2. Believing it probable that he is rendering aid to a person who intends to possess or dispose of hazardous wastes without authorization, engage in conduct which provides such person with the means or opportunity for the commission thereof and which in fact aids such person to commit such act".

Violation of this provision constitutes a class A misdemeanor (ECL 71-2721 [3]). We must determine whether there is sufficient evidence in the record to support the jury verdict finding the defendants guilty of attempting to cause their commercial waste hauler to possess or dispose of hazardous waste without authorization in violation of ECL 71-2715 (1). Notwithstanding Criminal Term's determination to the contrary *(People v J.R. Cooperage Co.,* 128 Misc 2d 222), we find the evidence adduced at trial to have been sufficient to warrant the conviction of the defendants. Criminal Term improperly construed the unlawful dealing in the second degree statute to require as the *sine qua non* to conviction, an overt act of solicitation, which in this case would have constituted a telephone call. The interpretation of the statute urged by the defendants and accepted by Criminal Term creates an intolerable loophole in the environ-

mental regulatory system. Were we to accept such a restrictive interpretation, the underlying purpose of the subject legislation would be irreparably undermined. We decline to adopt such a narrow and strict construction. For the reasons which follow, a reversal of the order under review is mandated.

The facts are essentially uncontroverted. The defendant J.R. Cooperage Company, Inc. is involved in the recycling of used steel drums for resale. The defendant Gustave Rosenberg is the president of that corporation. On December 13, 1983, a team comprised of representatives from the New York City Department of Investigation, the New York City Department of Environmental Protection, and the New York City fire, police and sanitation departments conducted a surprise raid on the defendants' business. From the defendants' premises, they seized for analysis 16 drums filled with a sludgy and viscous waste material. The drums seized were situated both inside of and in very close proximity to a refuse dumpster located in a recessed area adjoining the office on the defendants' plant. Inscribed on the dumpster were the initials "RB" designating the Red Ball Sanitation Service Corporation (hereinafter Red Ball), the defendants' commercial trash hauler.

Red Ball is licensed in New York City as a class 1 commercial refuse remover. It was at no time licensed to pick up hazardous wastes from the defendant corporation. The defendants had received notice, by means of an engineer's report submitted to them more than two months prior to the raid, that the waste stream generated by their cleaning processes had been found to contain hazardous materials, particularly, chromium and mercury. They nevertheless failed to contract with a licensed hazardous waste hauler. Rather, Red Ball was the sole private carter utilized by the defendants.

J.R. Cooperage Company, Inc. and Red Ball had a continuing contractual relationship dating back to 1977. Pursuant to this arrangement, Red Ball would make a refuse collection in response to a pickup order from the defendants. Such orders were routinely made when the dumpster was full. Pickups were generally made around 2:00 A.M. There is only one occasion of record where Red Ball made a collection without having first received a pickup order. On that occasion, an employee of the carter took it upon himself to pick up the defendants' refuse after noting that the dumpster was filled to capacity. There is no evidence on record that Red Ball could refuse a pickup order. In order to discontinue service, it was

compelled to provide the defendants, by registered mail, with two weeks written notice.

Red Ball's employees were not required to inspect the contents of the defendants' dumpster before emptying it. In the ordinary course of business, drums placed adjacent to the dumpster would also be collected by the carter.

The defendants' operation involved the use of an oil separator or tank which was located near a pit. The function of the pit was to collect waste water destined for the sewer system and to eliminate from it a thick, oily sludge. On the day of the raid, the oil separator was nearly empty. Adjacent to the pit was a damp shovel, a funnel and a grouping of large 55-gallon drums as well as smaller ones stacked in front. The material in one of these drums, which was readily visible since it had no lid, resembled the residue in the oil separator in color and consistency. Samples were taken by the investigative team of the sludge residue found in the oil separator as well as of the contents of the drums both inside of and adjacent to the dumpster. Chemical analysis of the samples taken from defendant's premises revealed ph readings as high as 13.5, 13.1 and 12.5. Substances characterized by very high ph factors were described at the trial as corrosive in nature with the capability of dissolving such substances as hair, flesh and animal tissues.

At the time of the raid, the defendant Rosenberg conceded to a member of the investigating team that some of the material inside the drums could possibly be corrosive and that his employees "might have probably" placed the subject drums in the dumpster by accident. His son, a truck driver for the company, indicated that the employees knew their jobs and that there was no need to supervise them.

In granting the defendants' motion for a trial order of dismissal and for an order setting aside the verdict, Criminal Term focused upon the fact that the People offered no evidence at trial to establish that either the corporate defendant or its president placed any pickup order with Red Ball between the time of its last prior refuse collection and the date on which the investigating team found the drums of hazardous waste material on its premises. Absent proof of some attempt at communication with Red Ball, even in the form of an undelivered message or a telephone communication initiated but not completed, the trial court concluded that the verdict could not stand. That decision was predicated upon the

reasoning that the language of ECL 71-2715 (1) is identical to the criminal solicitation sections of the Penal Law. As such, the absence of any direct proof of an attempt to commit the unlawful solicitation was deemed fatal.

The narrow statutory construction accorded the aforesaid provision does violence to the Legislature's paramount concern, namely, the prohibition of any unauthorized trafficking in hazardous wastes. The provision under which the defendants were convicted is part of a civil and criminal statutory scheme enacted by the Legislature to regulate all persons who generate, store, transport, treat or ultimately dispose of hazardous wastes (see, ECL 27-0900 et seq.). In enacting this statutory scheme, the Legislature recognized as the key to controlling hazardous wastes, the mandatory system of identifying and tracking shipments of these wastes from the point at which they are generated to their ultimate disposal (Weinberg, Practice Commentary, McKinney's Cons Laws of NY, Book 17½, ECL 27-0900, at 582).

Pursuant to that end, Assembly Bill No. 1621 was proposed, the stated purpose of which was to: "establish a new, comprehensive scheme of felony and misdemeanor offenses for processing, disposing of or dealing in hazardous waste without appropriate authorization or in violation of the Environmental Conservation Law. Serious violations of the State's hazardous waste laws, which threaten or result in grave harm to the public, will be deterred to the maximum extent practicable and redressed as befits their gravity".

The bill was also intended to encompass criminal violations by corporations, thereby endeavoring to remove any incentive to commit acts of illegal possession, disposal of or dealing in hazardous wastes which had theretofore been safeguarded by a corporate shield. As set forth in the Practice Commentary to the provision making the unlawful possession of hazardous wastes in the second degree a class E felony (ECL 71-2707, 71-2721 [1]), the new provisions enacted were the manifestation of "the most serious intent on the part of the Legislature to enforce the hazardous waste articles stringently, in recognition of the severe consequences of improper handling and disposal of these substances" (Weinberg, Practice Commentary, McKinney's Cons Laws of NY, Book 17½, ECL 71-2707, at 283).

A broad interpretation of the statute regarding unlawful dealing in hazardous wastes in the second degree is particu-

larly appropriate here in view of the high ph results obtained from chemical analysis of some of the samples taken from the defendants' premises. As recognized in the memorandum accompanying Assembly Bill No. 7949, the purpose of which was to provide increased penalties and enforcement by District Attorneys and the Attorney-General for the unlawful possession, disposal and dealing in hazardous wastes, "unlawful possession and disposal of hazardous wastes, with the long-term toxicity that is inherent in these substances, may pose a greater threat to the health and safety of the citizens of this State than street crime". It is well settled that laws and regulations governing public health should be liberally construed (People v Frudenberg, 209 NY 218; Matter of Putnam Lake Community Council Bathing Beaches v Deputy Commr. of Health of State of N. Y., 90 AD2d 850; People v Eisen, 77 Misc 2d 1044, affd 79 Misc 2d 829). Accordingly, statutes are to be interpreted in such a manner that they may, as far as possible, attain the end in view (McKinney's Cons Laws of NY, Book 1, Statutes § 341). This construction is not per se inconsistent with the criminal law concept of nullum crimen sine lege. As long as the standards set forth by the Legislature in the penal provisions in question are capable of ·reasonable application to varying fact situations, no fault can be found (see, People v Eisen, supra). It is not necessary to run afoul of these standards in order to uphold the verdict in the instant case.

In adopting its narrow statutory construction, the trial court not only ignored the plain meaning of the unlawful dealing statute but also failed to apply the proper standard of review. In the course of setting aside a verdict pursuant to CPL 330.30, a trial court is obligated to assume that the jury credited the People's witnesses, and, thus, must view the evidence most favorably to the prosecution (People v Montanez, 41 NY2d 53, 57; People v Woods, 99 AD2d 556).

Viewed in this manner, the evidence adduced in the instant case leads ineluctably to the conclusion that the defendants, acting with intent to commit the crime of unlawful dealing in hazardous wastes in the second degree, took conscious steps to carry forward their project to within dangerous proximity of accomplishment. The verdict was clearly predicated upon more than mere speculation as to what might have actually occurred but for the arrival of the investigating crew (cf., People v Ciardullo, 106 AD2d 14, 20). The defendants' agents shoveled a large quantity of a viscous, sludge-like material

from a work pit on the premises and funneled this material into drums. After they were filled, the drums were removed from the plant and positioned in close proximity to a refuse dumpster. Seven of the drums containing this noxious material were placed in the dumpster for disposal in the manner of ordinary, nonhazardous refuse. The final act towards completion of the crime was for the defendants to have performed the ministerial act of telephoning the pickup order to Red Ball as they had done in their usual course of business since 1977. The defendants conceded that it was their established pattern to place a pickup order when the dumpster was full. There was uncontroverted evidence that the dumpster was full at the time of the raid. In view of the long-standing business relationship between the defendants and Red Ball, no specific procedure other than a routine telephone call to Red Ball's secretary was required. Under the circumstances, the trial court's elevation of the telephone call, a simple ministerial act, to the level of a condition precedent is unfounded and denies the reality of the situation. Absent any evidence that the defendants had another hauler properly licensed to carry hazardous waste or that an inspection of the contents of the Red Ball dumpster, conducted at some point between the loading of it and the placement of a telephone pickup order by the defendant Rosenberg, would have led to the discovery of the "accident", the trial court's rejection of the jury's findings was improper. On this set of facts, it cannot reasonably be contended that the jury drew "unwarranted conclusions based on probabilities of low degree" (People v Benzinger, 36 NY2d 29, 32; People v Briggs, 111 AD2d 340, 341).

As the People have aptly argued, the trial court's interpretation of the pertinent provision effectively reduces the unlawful dealing statute to the level of a superfluous redundancy. As per that interpretation, the unlawful dealing in hazardous wastes statute would be the same crime as criminal solicitation or unlawful possession (ECL 71-2707, 71-2709) or unlawful disposal (ECL 71-2711, 71-2713) of hazardous wastes.* Had that been reflective of the legislative intent, there would have been no need to enact a separate unlawful dealing statute inasmuch as the existing criminal solicitation provisions of the Penal Law could have been used in conjunction with the

---

* The unlawful dealing in hazardous wastes in the second degree provision (ECL 71-2715), unlike the unlawful possession or unlawful disposal provisions (see, ECL 71-2707, 71-2709, 71-2711, 71-2713), requires no minimum quantity.

unlawful possession and unlawful disposal sections to achieve that same end.

As an alternative argument for affirmance, the defendants urge that the regulations under which they were indicted were declared invalid in *People v Macellaro* (131 Misc 2d 383). The defendants did not raise this argument at Criminal Term and, in any event, it is not properly before this court on the instant appeal by the People *(People v Goodfriend,* 64 NY2d 695, 698).

In conclusion, the jury properly found the defendants guilty of attempting to cause their commercial waste hauler to dispose of hazardous wastes in violation of ECL 71-2715 (1), notwithstanding the absence of any overt attempt to solicit Red Ball on the date in question. The overwhelming evidence that the defendants intentionally and consciously took steps to carry out their project and came within close proximity of accomplishment sufficed to establish an attempt on their part to cause Red Ball to possess hazardous wastes unlawfully as proscribed by the aforesaid subdivision. To construe the formal act of a telephone call as a condition precedent under these circumstances is to subvert the underlying legislative purpose. Consequently, the order setting aside the verdict should be reversed, the verdict should be reinstated, and the matter should be remitted to the Supreme Court, Kings County, for sentencing.

MANGANO, J. P., BROWN and SPATT, JJ., concur.

Ordered that the order is reversed, on the law, the defendants' motion for an order setting aside the jury's verdict finding them guilty of unlawful dealing in hazardous wastes in the second degree is denied, and the matter is remitted to the Supreme Court, Kings County, for sentencing.